**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1480-24

L.L., a minor, by his
parents and guardians ad
litem, J.H. and Q.L.,

      Plaintiff-Appellant,

v.

FAMILY ADVENTURES
NORTH JERSEY, LLC, d/b/a
URBAN AIR TRAMPOLINE
& ADVENTURE PARK
SOUTH HACKENSACK,

      Defendant-Respondent.

_____

      Argued September 30, 2025 – Decided October 31, 2025

      Before Judges Gilson, Firko, and Vinci.

      On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5337-24.

      David K. Chazen argued the cause for appellant (Chazen & Chazen, LLC, attorneys; David K. Chazen, of counsel and on the briefs).

Andrew R. Churchill argued the cause for respondent (Reilly, McDevitt & Henrich, PC, attorneys; Michael J. Jubanyik and Andrew R. Churchill, on the brief).

PER CURIAM

A father took his two sons to a trampoline park, where the younger son was injured. Before entering the park, the father was presented with and signed an electronic version of a "WAIVER, RELEASE AND INDEMNIFICATION AGREEMENT," which also had an arbitration provision (the proposed Agreement).

When the parents of the child sued the corporation that owned the trampoline park, the corporation moved to stay the action and compel arbitration. The question presented is whether the father knowingly waived his minor son's right to a jury trial and agreed to arbitrate all disputes. We hold that the father did not, because the font size of the proposed Agreement was too small to be read and the proposed Agreement had confusing and contradictory terms that prevented a reasonable consumer from understanding what he or she was agreeing to waive. Consequently, we reverse and vacate a January 6, 2025 order that stayed the Law Division action and compelled the minor plaintiff to pursue his personal injury claims in arbitration.

I.

On June 23, 2024, five-year-old L.L. went with his father and brother to a trampoline park in South Hackensack.[1] The park was owned by Family Adventures North Jersey, LLC, d/b/a Urban Air Trampoline and Adventure Park South Hackensack (defendant or Urban Air).

To gain access to the park, plaintiff's father was required to sign an electronic version of the proposed Agreement. The record is not entirely clear how the proposed Agreement was presented to the father. In moving to compel arbitration, defense counsel informed the trial court that the proposed Agreement may have been presented at a kiosk at the entrance to the park. Defense counsel also suggested that the father may have reviewed the proposed Agreement on one of his own electronic devices.

What is not in dispute is that the proposed Agreement was presented and reviewed electronically. It is also undisputed that the electronic version of the proposed Agreement had very small print. Defendant submitted a paper version of the proposed Agreement and represented that it was in the same size as presented electronically to the father. The font size of the proposed Agreement

---

[1] We use initials for the minor plaintiff to protect his privacy interests, which compelling interests outweigh the Judiciary's commitment to transparency.

A-1480-24

was five. Moreover, certain paragraphs of the proposed Agreement were all capitalized and other paragraphs use sentences with only initial capitalization. Because a written description cannot adequately convey the small font size used in the electronic version of the proposed Agreement, we have included a picture of a portion of the proposed Agreement as presented by defendant in the record. What the father saw is depicted below:

The proposed Agreement contained ten numbered paragraphs. The fifth paragraph was entitled "Release and Indemnity," and was capitalized and bolded. An enlarged version of that paragraph reads:

5. <u>RELEASE AND INDEMNITY</u>. **TO THE FULLEST EXTENT PERMITTED BY LAW, ADULT PARTICIPANT ON BEHALF OF HIMSELF, CHILD PARTICIPANT, AND THEIR HEIRS, EXECUTORS, AND REPRESENTATIVES RELEASES, AGREES NOT TO SUE, AND SHALL INDEMNIFY AND DEFEND URBAN**

4

**AIR, [AND OTHER PROTECTED PARTIES] FROM AND AGAINST ALL LIABILITIES, LOSSES, DAMAGES, CLAIMS, DEMANDS, ACTIONS, SUITS, CAUSES OF ACTION, COSTS, FEES, AND EXPENSES (INCLUDING REASONABLE ATTORNEY'S FEES AND COURT OR OTHER COSTS) (COLLECTIVELY, CLAIMS) RELATING TO, RESULTING FROM, OR ARISING OUT OF OR ALLEGED TO HAVE ARISEN OUT OF (IN WHOLE OR IN PART) ANY PROPERTY DAMAGE OR BODILY INJURY (INCLUDING DEATH) TO PARTICIPANT RESULTING IN ANY WAY FROM (A) PARTICIPANT'S USE OF THE PREMISES, (B) PARTICIPANT'S ACTIVE OR PASSIVE PARTICIPATION IN THE ACTIVITIES, (C) LOSS OR THEFT OF PERSONAL PROPERTY, (D) FROM THE CONSUMPTION OF ALCOHOL AT THE PREMISES BY PARTICIPANT OR ANY OTHER INVITEE OF URBAN AIR, OR (E) PARTICIPANT'S BREACH OF THIS AGREEMENT. THIS RELEASE AND INDEMNITY SHALL APPLY EVEN IF ANY CLAIM IS CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, GROSS NEGLIGENCE, STRICT LIABILITY, OR WILLFUL MISCONDUCT OF THE PROTECTED PARTIES OR PARTICIPANT. THE INDEMNITY SHALL ALSO INCLUDE ADULT PARTICIPANT'S OBLIGATION TO INDEMNIFY THE PROTECTED PARTIES FROM (A) ANY SUM OR SETTLEMENT PAID TO OR ON BEHALF OF THE CHILD PARTICIPANT RESULTING FROM A CLAIM IN ANY WAY INVOLVING THE FOREGOING SUBSECTIONS AND (B) ALL CLAIMS RESULTING FROM OR RELATING TO ANY INSUFFICIENCY OF PARTICIPANT'S LEGAL CAPACITY OR AUTHORITY TO EXECUTE THIS AGREEMENT FOR OR ON BEHALF OF THE CHILD PARTICIPANT.**

The arbitration provision was contained in the sixth paragraph of the proposed Agreement, which had two subparagraphs, entitled: "A. Arbitration." and "B. Waiver of Jury Trial." Subparagraph 6(A) was neither bolded nor written in all capital letters. An enlarged version of that subparagraph reads:

5

A. <u>ARBITRATION</u>. Any dispute or claim arising out of or relating to this Agreement, breach thereof, the Premises, Activities, property damage (real or personal), personal injury (including death), or the scope, arbitrability, or validity of this arbitration agreement (<u>Dispute</u>) shall be brought by the parties in their individual capacity and not as a plaintiff or class member in any purported class or representative capacity, and settled by binding arbitration before a single arbitrator administered by the American Arbitration Association (<u>AAA</u>) per its Commercial Industry Arbitration Rules in effect at the time the demand for arbitration is filed. Judgement on the arbitration award may be entered in any federal or state court having jurisdiction thereof. The arbitrator shall have no authority to award punitive or exemplary damages. If the Dispute cannot be heard by the AAA for any reason, the Dispute shall be heard by an arbitrator mutually selected by the parties. If the parties cannot agree upon an arbitrator, then either party may petition an appropriate court to appoint an arbitrator. Arbitration and the enforcement of any award rendered in the arbitration proceedings shall be subject to and governed by 9 U.S.C. § 1 et seq.

An enlarged version of subparagraph 6(B) reads:

B. <u>WAIVER OF JURY TRIAL</u>. **<u>TO THE EXTENT PERMITTED BY LAW, ADULT PARTICIPANT AND URBAN AIR KNOWINGLY, WILLINGLY, AND VOLUNTARILY, WITH FULL AWARENESS OF THE LEGAL CONSEQUENCES, AFTER CONSULTING WITH COUNSEL (OR AFTER HAVING WAIVED THE OPPORTUNITY TO CONSULT WITH COUNSEL) AGREE TO WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY DISPUTE AND TO RESOLVE ANY AND ALL DISPUTES THROUGH ARBITRATION.</u>** The right to a trial by jury is a right parties would or might otherwise have had under the Constitutions of the United States of America and the state in which the Premises is located.

While at the trampoline park, L.L. suffered fractures to his left ulna and radius. Several months later, in September 2024, his parents, on his behalf, filed a personal injury action against defendant in the Law Division. In the complaint,

6

plaintiff asserted claims of gross negligence; failure to warn; equitable fraud; strict product liability; violations of the Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -18; violations of the Product Liability Act, N.J.S.A. 2A:58C-1 to -11; and violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -229.

Shortly after the action was brought, defendant moved to stay the Law Division action and compel plaintiff's claims to arbitration. After hearing oral argument, on January 6, 2025, the trial court granted that motion and issued an order and written decision. In its written decision, the trial court included enlarged versions of paragraphs five and six of the proposed Agreement and reasoned that those provisions adequately informed the father that he was waiving his son's right to bring an action in court.

Plaintiff now appeals from the order staying the Law Division action and compelling his claims to arbitration. After plaintiff filed his notice of appeal, on June 19, 2025, the trial court issued a three-page written amplification supporting its decision.

II.

On appeal, plaintiff argues that the arbitration provision is unenforceable because it was hard to read, confusing, and contained misleading provisions.

7

Thus, plaintiff contends that his father did not understand the proposed Agreement and he should not be bound by the arbitration provision.

A.

The interpretation of an arbitration provision and its enforceability are questions of law that we review de novo. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019); Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014). Under both federal and New Jersey state law, there are strong policies favoring arbitration. Atalese, 219 N.J. at 440.

The arbitration provision in the proposed Agreement stated that any "[a]rbitration and the enforcement of any award rendered in the arbitration proceedings shall be subject to and governed by [the Federal Arbitration Act (FAA)] 9 U.S.C. § 1 [to -16]." The FAA applies to "[a] written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . ." 9 U.S.C. § 2.

Whether plaintiff's visit to a New Jersey trampoline park involved interstate commerce and was governed by the FAA is a debatable point. Plaintiff and his father were New Jersey citizens. Defendant is a New Jersey limited liability corporation, and its trampoline park is in New Jersey. Nevertheless, the

A-1480-24

issue of whether the FAA or the nearly identical New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36, apply is not a controlling issue to the issue we must resolve.

B.

Under both the FAA and the NJAA, arbitration is fundamentally a matter of contract. 9 U.S.C. § 2; NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011). "[T]he FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Atalese, 219 N.J. at 441 (omission in original) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

In determining whether a matter should be submitted to arbitration, the court must evaluate whether a valid agreement to arbitrate exists. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Martindale, 173 N.J. at 83, 92. "Like all contractual agreements, an arbitration agreement must be the product of mutual assent." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 330 (2019) (Albin, J., concurring). In turn, "[m]utual assent requires that the parties have an understanding of the terms to which they have agreed." Atalese, 219 N.J. at 442.

A-1480-24

When evaluating a contract of adhesion presented to a consumer, the terms of an arbitration provision must be "sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right." Atalese, 219 N.J. at 443. Accordingly, the focus is on the overall language of the proposed agreement and whether the consumer should have fairly known that by signing the contract he or she was knowingly assenting to arbitration as an exclusive remedy. Kernahan, 236 N.J. at 322. "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. There must, however, be "some general and sufficiently broad" language that conveys that arbitration is a waiver of the right to bring a suit in a judicial forum. Id. at 447. "The key . . . is clarity." Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 607 (App. Div. 2015).

We have held that a waiver form containing an arbitration provision presented to a consumer entering a trampoline park is enforceable, so long as the arbitration provision is clearly identified and clearly explained. See Perez v. Sky Zone LLC, 472 N.J. Super. 240, 248-49 (App. Div. 2022). In contrast, the New Jersey Supreme Court has explained that when a contract fails to signal to a consumer that the contract contains an arbitration provision, or when the provisions of the proposed contract are confusing and contradictory, the

10

arbitration provision will not be enforceable. See Kernahan, 236 N.J. at 322-23; see also Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 586-87 (App. Div. 2004). In Kernahan, the New Jersey Supreme Court examined an arbitration clause present in a home service agreement. 236 N.J. at 309. The court invalidated the arbitration agreement because it was placed inconspicuously under a section labeled "Mediation," was difficult to read due to its small font and disorganized structure, and improperly invoked mediation rather than arbitration rules. Id. at 325. The court noted that it would be "unreasonable to expect a lay consumer to parse through the contents of this small-font provision to unravel its material discrepancies." Id. at 326.

In this matter, the contract presented by defendant fails for two related reasons. First, and foremost, the contract was provided electronically in a form that was extremely difficult to read. Plaintiff's father was presented with an electronic form that included 2,148 words that appeared in small print size consisting of font size five. In short, any reasonable person, even one who was seeking to read and understand what was being presented, would have a difficult time reading the electronic proposed Agreement.

Defendant has suggested that the electronic proposed Agreement could have been enlarged. There is, however, no support for that contention in the

record. Defendant did not submit any affidavit or other evidence that the proposed agreement could be enlarged. Just as importantly, defendant did not establish that plaintiff's father was adequately informed that he could enlarge the small print size. Consequently, while it is well established that a party to a contract has the obligation to read the contract, Skuse v. Pfizer, Inc., 244 N.J. 30, 54 (2020), a party must be given a reasonable chance to undertake that review.

The small print size was compounded by the confusing nature of the proposed Agreement. The proposed Agreement contained ten different provisions. The arbitration provision was in paragraph six. Before getting to that provision, however, the consumer was presented with a "Release and Indemnity" provision. In confusing language, that provision essentially told the consumers that neither they nor any of their children could sue the trampoline park owner and if they did, the consumers would have to pay for all "liabilities, losses, damages, claims, demands, actions, suits, causes of action, costs, fees, and expenses (including reasonable attorney's fees and court or other costs)." In other words, read literally, that indemnification clause told the consumers that even if they felt the park had been negligent, if they brought a suit or a claim in any forum, they would be the ones who would be responsible for any damages

A-1480-24

and costs.  Notably, that provision is unenforceable against a minor plaintiff. See Hojnowski v. Vans Skate Park, 187 N.J. 323, 338 (2006); Dare v. Freefall Adventures, Inc., 349 N.J. Super. 205, 223 (App. Div. 2002). Moreover, its wording is exceedingly confusing.  It tells consumers that they really cannot bring a claim in any forum, including arbitration, and if they do, they will have to pay the costs or any resulting award.

The arbitration provision then follows that confusing Release and Indemnity provision.  Additionally, the arbitration provision states that the arbitration would be conducted by the American Arbitration Association (AAA) under its "Commercial Industry Arbitration Rules."  Two years before plaintiff's father was presented with the proposed Agreement in New Jersey, defendant's corporate parent, which is located in Texas, was notified that the AAA's commercial industry arbitration rules do not apply to a consumer contract.  The parent corporation was also told that the provision in its arbitration clause, which informed consumers that they could not be awarded punitive damages, was inconsistent with the governing arbitration rules of the AAA.

While those two problems with the arbitration provision might not make the entire proposed Agreement unenforceable in and of themselves, when coupled with the confusion created by the release and indemnity provision, the

13

overall proposed contract in this case was simply too confusing and did not put consumers on clear notice as to what they were being asked to waive.

In making this ruling, we point out that our decision is not based on the arbitration provision itself. Instead, we are holding that the proposed Agreement was not clearly presented and did not allow the consumer to read and understand the proposed Agreement. Accordingly, the proposed Agreement failed because it did not comply with New Jersey's general contract law that requires mutual assent to form a binding contract. See Atalese, 219 N.J. at 442. Thus, our ruling is consistent with precedent from the United States Supreme Court. See Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. 246, 252 (2017) (prohibiting state laws or rulings that are hostile to arbitration and do not put "arbitration agreements on an equal plane with other contracts").

Accordingly, we reverse the January 6, 2025 order in this matter that stayed the Law Division action and compelled plaintiff's claims to arbitration. We remand this matter with direction that the stay be lifted and plaintiff be allowed to pursue his claims in the Law Division.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

14                                                                          A-1480-24